EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re: <br><br> Luis A. Toro Goyco | 2007 TSPR 58 <br><br> 170 DPR _____ |

Número del Caso: CP-2004-4

Fecha: 2 de marzo de 2007

Oficina del Procurador General:

        Lcdo. Héctor Clemente Delgado
        Procurador General Auxiliar

        Lcda. Minnie H. Rodríguez López
        Procuradora General Auxiliar

Abogados de la Parte Querellada:

        Lcdo. César A. Hernández Colón
        Lcdo. Mariano Vidal Sáenz

Materia: Conducta Profesional
       (La suspensión del abogado advino final y firme el
       día 26 de marzo de 2007)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Luis A. Toro Goyco

CP-2004-4

PER CURIAM

San Juan, Puerto Rico, a 2 de marzo de 2007

El abogado Luis A. Toro Goyco fue admitido a la práctica de la abogacía el 7 de junio de 1967 y juramentó como notario el 5 de febrero de 1970. Tras una investigación efectuada por el Departamento de Hacienda, se le notificó al querellado deficiencias en sus planillas de contribución sobre ingresos para los años 1988, 1989 y 1990. A raíz de ello, contra Toro Goyco se presentaron denuncias, por delito grave, por alegada violación a la Sección 425(b)(1) de la Ley de Contribuciones Sobre Ingresos de Puerto Rico de 1954.[1]

---

[1] Dicha Ley, <u>ahora derogada</u>, establecía:
Cualquier persona que voluntariamente hiciere y suscribiere cualquier planilla

(Continúa ...)

El 19 de mayo de 1994, y como consecuencia de una alegación preacordada, Toro Goyco se declaró culpable de tres cargos —todos menos grave— por violación a la entonces vigente Sección 145(a) de la Ley de Contribuciones Sobre Ingresos de Puerto Rico de 1954[2]. Además, se le

_____

planilla, declaración u otro documento que contuviere, o estuviere autenticada mediante, una declaración escrita al efecto de que se rinde bajo las penalidades de perjurio, la cual planilla o declaración o el cual documento ella no creyere ser ciertos y correctos en cuanto a todo hecho pertinente, será culpable de delito grave y castigada con multa no mayor de $2,000 o reclusión por no más de 5 años en la institución penal que designe el Secretario de Justicia, o ambas penas.

[2] En lo pertinente, dicha Ley disponía:

(a) *Omisión de Depositar Contribuciones Deducidas y Retenidas.* Cualquier persona que, en violación a lo dispuesto en la sec. 3421A de este título, dejare de depositar cualquier contribución en la forma y fecha allí prescritas, será informada por el Secretario de tal omisión mediante notificación escrita enviada por correo cerificado con acuse de recibo o entregada personalmente a dicha persona, quien deberá cobrar aquellas contribuciones impuestas por la sec. 3141 de este título que son exigibles después de la entrega de tal notificación y depositar las mismas, no más tarde del quinto día laborable después de la fecha en que se cobre dicha contribución, en las Colecturías de Rentas Internas del Estado Libre Asociado de Puerto Rico, en el Negociado de Contribución sobre Ingresos del Departamento de Hacienda o en cualquiera de las instituciones bancarias designadas como depositarias de fondos públicos y que hayan sido autorizadas por el Secretario a recibir tal contribución, según provee en la sec. 3421B de este título. En el caso de una corporación, sociedad o fideicomiso, una notificación por correo certificado con acuse de recibo o entregada personalmente a un oficial, socio o fiduciario de tales

requirió el pago de $350,000 en concepto de contribuciones adeudadas y no pagadas en relación con los antes mencionados años contributivos. Señalado el caso ante el Tribunal de Primera Instancia, Sala Superior de San Juan, el querellado fue condenado al pago de $300 de multa por cada cargo. Toro Goyco cumplió con todas las sanciones impuestas, incluyendo el pago adeudado por contribuciones.

El 23 de octubre de 1995, el Procurador General de Puerto Rico presentó un informe ante este Tribunal en el cual hizo referencia a los hechos antes relatados. Adujo que las actuaciones de Toro Goyco constituían delitos que implicaban depravación moral y conllevaban la suspensión o destitución de la profesión de la abogacía y la notaría. También adujo que la conducta de Toro Goyco contravenía lo dispuesto en el Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 38.

El 4 de marzo de 1996, Toro Goyco radicó su contestación al informe presentado por el Procurador General. No obstante admitir los hechos correspondientes a su convicción, negó haber incurrido en un patrón de

---

organizaciones será considerada, para fines de esta sección, como si fuera entregada a la corpoación, sociedad o fideicomiso.

(b) *Penalidad*.   Cualquier persona que, habiendo recibido una notificación del Secretario según se provee en el apartado (a), dejare de cumplir con los requisitos de dicho apartado, en adición a otras penalidades provistas por ley, incurrirá en delito menos grave y convicta que fuere será castigada con multa no mayor de $5,000 o reclusión por no más de 1 año, o ambas penas, a discreción del tribunal.

conducta constitutiva de depravación moral o de haber menospreciado la ley y las buenas normas de conducta profesional.

El 20 de abril de 2004, luego de examinar tanto el informe del Procurador General, como la contestación de Toro Goyco, instruimos al Procurador General para que radicara la correspondiente querella. El 29 de junio de 2004, el Procurador General presentó la querella contra Toro Goyco. En ella se formularon dos cargos contra el querellado.

En el primer cargo se aduce que las deficiencias contributivas en que Toro Goyco incurrió constituyen conducta revestida de depravación moral. En el segundo cargo se sostiene que Toro Goyco violó el Canon 38 de Ética Profesional, ante, por haber incurrido en conducta impropia y fraudulenta, lesionando así el honor y la dignidad de la profesión legal. En su contestación a la querella, Toro Goyco reiteró que el delito por el cual hizo alegación de culpabilidad era uno menos grave que no implica depravación moral. Sostuvo, además, no haber incurrido en conducta impropia a tenor con el Canon 38 de Ética Profesional, ante.

Examinada la querella presentada por el Procurador General y la contestación de Toro Goyco, designamos una Comisionada Especial para que recibiera prueba y rindiera un informe con las correspondientes determinaciones de

hechos y recomendaciones. Habiéndose rendido el informe por la Comisionada Especial, resolvemos.

I

Reiteradamente hemos establecido que este Tribunal tiene poder inherente para regular la profesión y disciplinar a los miembros de la misma. En lo pertinente, la Sección 9 de la Ley de 11 de marzo de 1909, 4 L.P.R.A. sec. 735, establece:

> El abogado que fuere culpable de engaño, conducta inmoral (*malpractice*), delito grave (*felony*) o delito menos grave (*misdemeanor*), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico. La persona que siendo abogado fuere convicta de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. A la presentación de una copia certificada de la sentencia dictada al Tribunal Supremo, el nombre de la persona convicta será borrado, por orden del Tribunal, del registro de abogados. Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, el Tribunal Supremo estará facultada para dejar sin efecto o modificar la orden de suspensión. (Énfasis suplido.)

La referida Ley establece las instancias que ameritan la separación de la profesión de un abogado. Vemos que no sólo la comisión de un delito grave o menos grave en conexión con la profesión acarrea la separación de la abogacía, sino también cualquier delito que conlleve depravación moral.

Este Tribunal ha tenido la oportunidad de interpretar qué conducta constituye depravación moral en diversas ocasiones. La primera vez que definimos el término "depravación moral" fue en el caso de <u>Morales Merced v. Tribunal Superior</u>, 93 D.P.R. 423 (1966). En éste establecimos que:

> "La depravación moral, tratándose de abogados, consiste […] <u>en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral</u>, como el delito de extorsión o el de defalco. En *Jordan* v. *De Gewge,* 341 U.S. 223, 229 (1951), se resolvió que <u>todo delito en que el fraude era un ingrediente básico siempre se había considerado que implicaba torpeza moral</u>. En general la consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias." (Énfasis suplido.)

Véase también, *In re* Vega Morales, res. el 17 de marzo de 2006, 2006 TSPR 55; *In re* Piñero Martínez, res. el 10 de febrero de 2004, 2004 TSPR 39; *In re* León Sánchez, res. el 27 de junio de 2003, 2003 TSPR 139; *In re* Calderón Nieves, res. el 21 de junio de 2002, 2002 TSPR 107; *In re* García Quintero, 138 D.P.R. 669,(1995).

Por otro lado, el Canon 38 de Ética Profesional, ante, dispone que un abogado debe exaltar su profesión y "evitar hasta la apariencia de conducta profesional impropia".[3]

---

[3] En lo pertinente el Canon 38 dispone:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de

Por ende, los abogados tienen la obligación de preservar el honor y la dignidad de su profesión. El deber de comportarse conforme al Canon 38, ante, aplica tanto dentro como fuera de la profesión. En otras palabras, un abogado que actúe de manera impropia no podrá justificar su conducta aduciendo que no se relaciona con la profesión de la abogacía. Siempre que la actuación del abogado afecte su condición moral, este Tribunal podrá sancionarlo. *In re Deynes Soto*, res. el 23 de marzo de 2005, 2005 TSPR 40; *In re Peña Peña*, 153 D.P.R. 642 (2001); *In re Astacio Caraballo*, 149 D.P.R. 790 (1999); *In re Belk Arce y Serapión*, 148 D.P.R 685 (1999); *In re Martínez y Odell*, 148 D.P.R 49 (1999); *In re Ramírez Ferrer*, 147 D.P.R.607 (1999); *In re Rivera Cintrón*, 114 D.P.R. 481, 491 (1983); Colegio de Abogados v. Barney, 109 D.P.R 845 (1980).

II

Nos toca resolver si las actuaciones de Toro Goyco constituyeron depravación moral y conducta impropia. Tras una alegación preacordada con el Ministerio Público, el

---

su profesión, aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.

[…]

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse de forma digna y honorable.

querellado se declaró culpable y fue convicto de tres cargos por infracción a la entonces vigente Sección 145 (a) de la Ley de Contribuciones sobre Ingresos de 1954. Como parte de la alegación preacordada, acordó con el Departamento de Hacienda pagar $350,000.00, suma que satisfizo.

Toro Goyco sostiene que, contrario a los casos de *In re* Rivera Cintrón, 114 D.P.R. 481 (1983), e *In re* Calderón Nieves, ante, en donde se suspendió indefinidamente a los abogados por no haber rendido planillas, su caso no es uno de delito grave que implique depravación moral. El querellado enfatiza que el delito por el cual fue convicto era menos grave. Explica que el *ratio decidendi* de las decisiones en *In re* Rivera Cintrón, ante, y en *In re* Calderón Nieves, ante, estribaron en que el delito era grave y por ende "reflejan circunstancias distintas y mucho más serias". No estamos de acuerdo.

El *ratio decidendi* en las decisiones de *In re* Rivera Cintrón, ante, y en *In re* Calderón Nieves, ante, no aluden al grado del delito como razón para concluir si existe, o no, depravación moral como argumenta el querellado. Más bien, el razonamiento esbozado en los casos enfoca la naturaleza deshonesta e implicaciones morales del delito. Por ejemplo, en *In re* Calderón Nieves, ante, expusimos que:

> "Estimamos que el delito grave de no radicar las planillas de contribución sobre ingresos denota 'depravación moral'. Así lo resolvimos en Rivera Cintrón, ante. El mismo es uno que claramente demuestra una deficiencia inherente del sentido de

> la moral y la rectitud de parte de la persona que
> así actúa, esto es, conlleva de parte de la
> persona la intención de hacer algo contrario a la
> honradez, los buenos principios y la moral,
> actuación que ciertamente es fraudulenta."
> (Énfasis suplido.)

Como podemos notar, la alusión a que el delito era grave se hizo como cuestión de hecho. Lo importante es que de la cita se desprende que el análisis de lo que comprende depravación moral está basado en la intención del actor y en la naturaleza engañosa de la acción.

En *In re* Vega Morales, ante, resolvimos unos hechos diferentes, pero relacionados a lo que constituye depravación moral. En lo pertinente, Vega Morales fue convicta del delito menos grave de tentativa de apropiación ilegal, el cual conllevó multa de $200. Ella, al igual que Toro Goyco, alegó que su conducta no constituía depravación moral. No obstante, Vega Morales fue separada indefinidamente de la profesión. En ese caso, nuestros fundamentos fueron similares a los esbozados en *In re* Rivera Cintrón, ante, y en *In re* Calderón Nieves, ante, en cuanto a lo que implica depravación moral, no importando la distinción entre delito grave o menos grave. Este Tribunal sostuvo que su "... actuación denota un comportamiento contrario a la justicia, la honradez, los buenos principios y la moral. Su conducta tampoco fue sincera y honrada […] demuestra claramente falta de honestidad de la licenciada Vega Morales". *In re* Vega Morales, ante.

No hay duda que el querellado fue convicto en tres cargos por delitos menos grave. Tampoco hay duda de que, en esencia, dicho delito comprende falta de honestidad y conducta contraria a la honradez, cuestión medular al concluir si existe depravación moral en la conducta del abogado. Toro Goyco, a sabiendas, dejó de someter información en su planilla de contribución sobre ingresos por tres años consecutivos, acción que ciertamente revela conducta contraria a la honradez, los buenos principios y la moral. Dichas actuaciones violan la Sección 9 de la Ley de 11 de marzo de 1909, ante, como también el Canon 38 de Ética Profesional, ante.

III

Por los fundamentos antes expuestos, procede ordenar la separación inmediata e indefinida de Luis A. Toro Goyco del ejercicio de la abogacía y de la notaría en Puerto Rico.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Luis A. Toro Goyco

                            CP-2004-4


                            SENTENCIA

        San Juan, Puerto Rico, a 2 de marzo de 2007

        Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la separación, inmediata e indefinida, de Luis A. Toro Goyco del ejercicio de la abogacía y de la notaría en Puerto Rico. Le imponemos a éste el deber de notificar a todos sus clientes de su inhabilidad de seguir representándolos e informar oportunamente de su suspensión indefinida a los foros judiciales y administrativos del País. Deberá, además, certificarnos el cumplimiento de estos deberes, dentro del término de treinta (30) días, contados a partir de la notificación de la presente Opinión Per Curiam, notificando también al Procurador General.

        La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra y sello notarial de Luis A. Toro Goyco, luego de lo cual los entregará a la Oficina de Inspección de Notarías para su examen e informe a este Tribunal.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino. El Juez Asociado señor Rivera Pérez inhibido. Los Señores y Señoras Jueces que intervienen lo hacen por Regla de Necesidad.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo